## Overseers of Poor of Parker City, Plffs. in Err., *v.* Overseers of Poor of DuBois Borough.

Where both the parents of a pauper reside out of the state, their residence cannot be considered in determining what district in the state is liable for his maintenance at the Danville Insane Asylum.

Where a pauper had only a residence in a borough and had gained no legal settlement there under our poor laws, either by payment of taxes, by taking a lease of real estate, or by hiring or indenture, under section 9, act of June 13, 1836, the borough is not liable for his maintenance and support in the asylum.

A wife, who for fourteen years has separated from her husband because of his intemperate habits and his failure to support her and her children can gain a settlement under the poor laws of this state in a district different from that in which the husband has or had his legal settlement; and the benefit of the settlement so gained by her inures to her children.

---

NOTE.—For the loss of settlement by removal from the state, see note to Lower Augusta Twp. v. Howard Twp. *ante,* 385.

A wife deserted by her husband, or compelled to separate from him on account of his misconduct, may acquire a settlement in her own right. Ayres's Case, 4 Pa. Co. Ct. 499; *Woodward Twp. v. Lock Haven,* 13 Pa. Co. Ct. 157; Loyalsock Twp. v. Johnsonburg, 14 Pa. Co. Ct. 323. But the fact of separation is not enough. She must secure a settlement by her own acts afterwards. Luzerne County v. Jenkins Twp. 4 Pa. Super. Ct. 16.

If her child subsequently gain a settlement out of the state, he would thereafter be in the same legal status as a person who was never in the state and would therefore have lost the settlement of his mother in the state.

To constitute domicil, two things must concur: residence, and the intention of making the place of residence the home of the party. The domicil of a person is that place in which he has fixed his habitation without any present intention of removing therefrom.

(Argued May 3, 1887. Decided May 16, 1887.)

January Term, 1887, No. 98, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, and GREEN, JJ. Error to the Quarter Sessions of Clearfield County to review a decree in proceedings to remove a pauper. Affirmed.

The pauper was arrested in Du Bois for a criminal offense and lodged in jail at Clearfield. He was subsequently adjudged a lunatic and sent to the insane asylum at Danville.

The order of the justice of the peace in this proceeding found that the pauper was chargeable to the district of Parker City, and the overseers of the poor of Parker City appealed from such order to the quarter sessions.

Further facts appear from the opinion of the court below.

Appellants presented the following points:

1. That as the evidence before the court shows that Georgiana U. Keyser, mother of Weller Keyser, the pauper, is a married woman whose husband is still alive, but has not lived with her for fourteen years, there being no dissolution of the marriage relation, she cannot gain a settlement under the laws of this commonwealth.

*Ans.* Denied.

2. That as evidence in the case shows that the father of the pauper is still alive, Weller Keyser could not derive a settlement through his mother, during the life of his father, there being no dissolution of the bonds of marriage.

*Ans.* Denied.

3. That the evidence shows that Weller Keyser, the pauper, left Parker City in the spring of 1880 for New Mexico, and from that time until sent to the asylum in 1884, had not been in Parker City but a week or so in the spring of 1883, and is, therefore, such an expression of an intent on his part of chang-

ing his place of residence or domicil as to lose a settlement in Parker City, if he ever had one.

*Ans.* We find no sufficient evidence of the facts upon which the point is predicated so far as his going to New Mexico is concerned; and we therefore mark this point denied.

4. That the evidence, showing that the father of the pauper was a man of intemperate habits and afforded no support to his family, might place Mrs. Keyser within the purview of the act of 1855 for the purposes contemplated therein, if she saw fit to take advantage of its provisions, but not to such an extent as to give her a civil existence separate from her husband.

*Ans.* Denied, so far as its application to the present case is concerned.

5. That the evidence, showing that Mrs. Keyser was compelled to leave her husband because he was a heavy drain on her subsistence and no use as a bread winner, is not such a malicious desertion, and accompanied with such aggravating circumstances, as would entitle either party to a divorce; and, therefore, the domicil of the husband remained the domicil of the wife.

*Ans.* Denied.

6. The evidence showing that Mrs. Keyser agreed with John W. Keyser upon the amount of rent to be paid, and that the rent was paid by J. P. Weller and Weller Keyser, is not such full and precise evidence of a contract of rental, and payment of rent under the same as is required by law.

*Ans.* Denied.

The court, KREBS, P. J., delivered the following opinion:

This case involves the legal settlement last held by Weller Keyser, an indigent insane person, who was put under arrest for a supposed criminal offense, and after being lodged in the county jail, upon an investigation held under the provisions of § 6 of the act of April 20, 1869, by three commissioners, one of whom was a physician, one a lawyer, and the third a reputable citizen was found to be insane, and upon due proceedings had was, on the 25th day of September, 1884, committed to the insane asylum at Danville, Pennsylvania.

Under § 4 of the act of 1861, P. L. 249, and other sections of that act, the county of Clearfield is primarily liable for the support of the said indigent insane person, Weller Keyser, but has

a remedy over against the proper district, liable by existing laws for support of such pauper. And if it appear that said Weller Keyser had no legal settlement in this commonwealth, then the burden of supporting him while in the asylum rests upon the county of Clearfield. This duty is clearly fixed by the act of 1854, P. L. 85, and has been expressly laid down by the supreme court in Juniata County v. Delaware Twp. 107 Pa. 68.

The county of Clearfield, finding by the report of the commissioners appointed to inquire into the lunacy of Weller Keyser, that he had resided in the borough of Du Bois, sued out a rule upon the poor overseers of said borough to show cause why the expense of the removal and the maintenance of the insane pauper should not be paid by said borough. Thereupon, the poor overseers of Du Bois borough take out an order of removal under the poor laws of the commonwealth, and endeavor to show that the last legal settlement of the said Weller Keyser was in Parker City, Armstrong county, Pennsylvania. From this order of removal Parker City poor district appealed, and the questions thus raised by this triangular case we are asked to dispose of in this hearing. No objection is raised now as to the anomalous form of this proceeding; and whatever irregularity there may be has been waived by the parties, and they are before the court with full notice and upon their evidence heard and argued by counsel.

We endeavor to determine first what facts are shown by the proof. It appears from the depositions as follows, to wit:

First, that the parents of the said Weller Keyser were married about 1837, and it would seem they never lived together in Pennsylvania.

Second, that about fourteen years before the proceedings had in this case the husband and wife separated. Where they lived at that time is not stated, except that the testimony of Mrs. Keyser is: "I never lived with him in Pennsylvania at all." Her testimony would strongly indicate that she left her husband; her reasons for so doing are found in her testimony: "My husband's habits were very intemperate, and he afforded me no support whatever. I was compelled to raise my children by my own help, too; and so I had to leave him, as he was a very heavy drain upon my subsistence, and no use as a bread winner at all."

Third, that Mrs. Keyser, the mother of Weller Keyser, resides in Washington, District of Columbia, and her husband, when last heard from, three years ago, was in Sheperdstown, West Virginia; and that they are not divorced so far as Mrs. Keyser has any knowledge.

Fourth, that Mrs. Keyser lived at Parker City, Armstrong county, Pennsylvania, about seven years, during which time her husband lived in West Virginia. The time during which she lived in Parker City was from August, 1876, to April 30, 1882.

Fifth, that Weller Keyser was twenty-six years old April 2, 1885, and was consequently seventeen years old when Mrs. Keyser moved to Parker City, and twenty-three years old when she left there.

Sixth, that during the time Mrs. Keyser lived at Parker City she rented a house from her son, John W. Keyser, and agreed to pay rent therefor, for a part of the time $5 a month and $8 a month for the residue of the time. The rent was paid to John W. Keyser by her son-in law, J. P. Weller, and her son, Weller Keyser. Weller Keyser made his home in the house with her until March 8, 1880.

Seventh, it does not clearly appear where Weller Keyser was from the 8th of March, 1880, until the summer or fall of 1883. He came to Du Bois some time during the last half of 1883, and it would seem left in December, 1883, and returned again in May, 1884. A witness, W. H. H. Bell, says: "I first got acquainted with him in Parker City, about four years previous to his (Keyser's) going to New Mexico. He lived with his mother. . . . Think he left Parker City in 1879 or '80; his mother was living there then; his mother left Parker City in 1881 or 1882; she had moved away before he came back; can't say how long."

The witness also says that Weller Keyser, the first time he came to Du Bois, told him he had been to Parker City about a week before he came to Du Bois. Whether he came from New Mexico direct to Parker City does not appear. Neither does it appear whether he was in New Mexico, except by his seemingly expressed determination of going there, and the fact that he was absent from Parker City, so far as the testimony before us shows his whereabouts.

Eighth, that Weller Keyser, having left Du Bois borough in

December, 1883, returned again on or about May 3, 1884, and remained until arrested for a supposed criminal offense.

Ninth, the said Weller Keyser is an unmarried man.

Conclusions of Law.

Upon these facts, gathered from the depositions, we are to determine which of the districts now in court upon the rule and the appeal is liable for the maintenance of Weller Keyser during his confinement in the asylum at Danville, and for the costs and expense of his removal thereto.

It is well settled by authority that the present residence of either of the parents of the said Weller Keyser cannot be considered in determining this question. Both reside out of the commonwealth, and we have no power to send the pauper beyond the limits of the state. See Limestone Twp. v. Chillisquaque, 87 Pa. 294; Juniata County v. Delaware Twp. 107 Pa. 68.

We are further of the opinion that the evidence fails to show that Weller Keyser had gained a legal settlement, under our poor laws, in the borough of Du Bois, either by payment of public taxes, by taking a lease of real estate, or by hiring or indenture, under the fifth, sixth and seventh paragraphs of § 9 of the act of June 13, 1836. He had at most a residence there, and under the provisions of the act of 1854, as between the county of Clearfield and the borough of Du Bois, the county is liable for his maintenance and support in the asylum.

But it is contended that the last place of legal settlement is Parker City, for the reason that his mother had gained a settlement there prior to her removal from there, in April, 1882, to Washington, District of Columbia. The answer by Parker City to this contention is that Mrs. Keyser, not being divorced from her husband, either *"a vinculo matrimonii,"* nor yet *"a mensa et thoro,"* she could not gain a legal settlement apart from that of her husband, and as her husband had never resided in Parker City for any time, she could not gain a settlement there so as to make Parker City responsible for her own maintenance, and therefore not for her children's maintenance.

So far as the learning and industry of counsel have been exerted and our own researches have enabled us to find authorities from our higher court, we have been unable to find any case exactly in point. In the case of Williamsport v. Eldred, 84 Pa. 429, the case, in our judgment, coming nearest to the point, the wife was divorced *"a mensa et thoro"* from her

husband; and therefore it does not determine authoritatively the exact question raised here. In short, Can a wife who has separated from her husband because of his "intemperate habits and his failure to support her and her children" gain a settlement under the poor laws of the state in a district different from that in which the husband has, or had, his legal settlement? The second section of the act of May 4, 1855, provides that "whensoever any husband, from drunkenness, profigacy, or other cause, shall neglect or refuse to provide for his wife, or shall desert her, she shall have all the rights and privileges secured to a '*feme sole* trader,' under the act of February 22, 1718," etc.

The third section of the same act provides that if "the husband or father, from drunkenness, profligacy, or other cause, shall neglect or refuse to provide for his child or children, the mother of such children shall have all the rights and be entitled to claim, and be subject to, all the duties reciprocally due between a father and his children," etc.

Now it is no longer an open question that, under § 2 of the act of 1855, the wife is by the very terms of the act itself given the right to acquire property and hold her separate earnings, and that no decree of the court declaring her a *feme sole* trader is required. Under its provisions then, she may make any contract binding herself and inuring to her benefit and for the support of her children, that she could do or make if sole and had never been under coverture. Black v. Tricker, 59 Pa. 13; Jacobs v. Featherstone, 6 Watts & S. 346; Cleaver v. Scheetz, 70 Pa. 496; Wilson v. Coursin, 72 Pa. 306; Winternitz v. Porter, 86 Pa. 35.

Here, then, is found her right to do certain acts which ignore the existence of a husband. He is, so far as these matters are concerned, legally dead. The act of June 13, 1836, § 9, ¶ 3, says that a settlement may be gained under our poor laws "by any person who shall bona fide take a lease of any real estate of the yearly value of $10, and shall dwell upon the same for one whole year and pay the said rent."

It is not disputed that Mrs. Keyser did this in Parker City. She lived there six years or more, having leased the premises she occupied from her son, John W. Keyser, and paid through her son-in-law and her son, Weller Keyser, $60 per annum rent for a part of the time, and for the residue

of the time $96 per annum. If she was not under coverture, but was a widow, it would not be contended but that this would make her legal settlement in Parker City. But it is the contention that the mere fact of the existence of a profligate husband, who has not lived with her for fourteen years past, takes away the entire legal effect of her contract of leasing there, and (if she was the pauper) would deprive her of a legal settlement and the right of support from the district.

We are not persuaded that such is the law, and think that the requirements of humanity and common sense require us to hold the reverse. If this conclusion is correct, then, under the third section of the act of 1855, the benefit of settlement gained by her inured to her children, whom she reared and supported while living in Parker City. It will be observed that the pauper was in his minority when his mother moved to Parker City and for four years after she came there, and there is no evidence to show that he had gained a settlement anywhere else within the state after his mother's removal from the state; and we would conclude that Parker City was his last place of legal settlement, without more discussion, if another question did not arise under the evidence, and not argued by counsel on either side, but which enters into the proper determination of the cause.

The evidence indicates that in the spring of 1880, Weller Keyser, the pauper, left home, expressing his determination to go to New Mexico. Whether he ever did go in fact is wholly conjectural; he was absent, as near as we can gather, about two years, perhaps more; where he was we are left without proof.

It would be undoubtedly true that if he had gained a settlement out of the state, he would thereafter be in the same legal status as a person who never was in the state, and would therefore have lost the settlement of his mother at Parker City. Juniata County v. Delaware Twp. 107 Pa. 74.

To constitute domicil two things must concur: first, residence; second, the intention of making the place of residence the home of the party. The domicil of a person is that place in which he has fixed his habitation without any present intention of removing therefrom. 1 Bouvier, Law Dict. 489; Story, Conflict of Laws, § 44; Carey's Appeal, 75 Pa. 205.

If Weller Keyser, when he left the state, had no present intention of returning, but had the intention of residing in New

Mexico, then he lost his domicil and settlement in Pennsylvania. But are we justified in saying that he had such intention, the existence of which is a necessity, in order to change his legal status, either as an elector or as a person entitled to the benefit of our poor laws, without proof thereof? Can we infer it from the mere fact, coming out incidentally in the testimony, that he said he was going to New Mexico? His declarations of his purpose in going, evidence of what he was engaged in while there, would be pertinent to show his intention and as determining his domicil and residence there. But we do not think that in a country where the people are given to traveling, as in ours, we ought to accept as an established fact so important a question, without evidence from which it may be fairly inferred.

If it be true that he did change his domicil and residence, then Parker City is no longer his last place of legal settlement, derivatively, through his mother; and the county would be liable. But we are of the opinion that the evidence on this point would not justify us in finding that he had gained a settlement or domicil out of the state; and consequently the last settlement in the state was that of his mother at Parker City. We, therefore, order and direct the rule to show cause why Du Bois borough should not be certified as the last place of legal settlement of Weller Keyser to be discharged. And we do hereby further certify that the last place of legal settlement of Weller Keyser, an indigent insane person, now in confinement in the asylum at Danville, Pennsylvania, was in Parker City poor district, Armstrong county, Pennsylvania; that said district is liable to the county of Clearfield, Pennsylvania, for the costs of removing the said pauper to the asylum, and for his maintenance and support while there.

Appellants took this writ, assigning as error the refusal of their points and the decree of the court.

*Wallace Bros.,* for plaintiffs in error.—Out of this statute has come the rule that a *feme sole* who has a settlement exchanges it at her marriage for the settlement of her husband. Buffaloe v. Whitedeer, 15 Pa. 184; Mifflin Twp. v. Elizabeth, 18 Pa. 17; Lake District v. South Canaan, 87 Pa. 19.

But the principle that the domicil of the husband is the domicil of the wife existed long before the statute. Warrender

v. Warrender, 2 Clark & F. 488; Williamsport v. Eldred Twp. 84 Pa. 429; City v. Bailey, 8 Phila. 485.

Under the act of 1855, or any other law relating to *feme sole* traders, they cannot gain a separate civil existence. These statutes but relieve her from certain marital disabilities concerning property and trade, but do not make her a *feme sole* for all purposes. She must act within the scope and intent of the statute, and when she gets beyond that, the disabilities of coverture attach. Cleaver v. Scheetz, 70 Pa. 496; Bell v. Ladd, 8 W. N. C. 129; Jacobs v. Featherstone, 6 Watts & S. 346; Heiss v. Davison, 1 W. N. C. 221.

A child can gain a settlement by birth or derivation, or by acquisition when of age, under the act of June 13, 1836; but where by derivation, it can only be from the father while living. Montoursville v. Fairfield Twp. 112 Pa. 99, 3 Atl. 862; Washington v. Beaver, 3 Watts & S. 548; School Directors v. James, 2 Watts & S. 568, 37 Am. Dec. 525; Lewis v. Turbut, 15 Pa. 145; Toby Twp. v. Madison, 44 Pa. 60.

If a party leaves the state with the intention to change his residence, and to take up his abode and make his home elsewhere, he loses his residence in the state, notwithstanding he may entertain a floating intention to return at some future period. State v. Frest, 4 Harr. (Del.) 558; State v. De Casinova, 1 Tex. 401.

When the court commits to the state lunatic hospital a pauper who has no legal settlement within this commonwealth, but only a residence therein, the county wherein he is found a lunatic shall pay the expenses of his maintenance and removal. Juniata County v. Delaware Twp. 107 Pa. 68.

*Thomas H. Murray* and *Cyrus Gordon,* for Du Bois poor district, appellee.—Under the facts in this case Georgiana Keyser was competent to acquire a settlement. Act of May 4, 1855, §§ 2, 3, 4; Black v. Tricker, 59 Pa. 13; Conley v. Bentley, 87 Pa. 48; Williamsport v. Eldred Twp. 84 Pa. 433.

The cases relied on by the other side are in harmony with this view.

The provision that the settlement of parents is that of their children "is a deduction from the statute, and not so expressly provided by the act of 1836." Burrell Twp. v. Pittsburgh Guardians, 62 Pa. 472.

A widow may acquire a settlement other than that of her late husband.   18 Pa. 17.

Settlement thus acquired is communicated to her children, and that for the reason that "necessity, it may be, induces her with her family to leave the place of her husband's last settlement, with a view to better her or their condition."   Id.

By the English common law, legitimate children derive their settlement from their father, if he has a settlement in England, and if he has none in England, then from their mother if she has one.   Rex v. St. Botolph, Burr. Sett. Cas. 2d ed. 367, and Rex v. St. Matthew Bethnal Green, Burr. Sett. Cas. 2d ed. 482.

Massachusetts, adopting the common-law rule in this respect, provides by statute that the settlement of the father, if he has one in the state, is that of the child.   But if the father has none in the state, then that of the mother is communicated to the child.   Amherst v. Shelburne, 13 Gray, 344; Randolph v. Easton, 23 Pick. 244.

Per Curiam:

The conclusions of law found by the learned judge are well supported by reason and authority.   The facts found are sustained by the evidence.   The judgment is affirmed on the opinion of the court.

Judgment affirmed.